# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANCORA CATALYST INSTITUTIONAL, LP, | ) )  ) |
| Plaintiff, | ) ) |
| v. | ) ) ) C.A. No. ___ |
| BLUCORA, INC., GEORGANNE C. PROCTOR, STEVEN ALDRICH, MARK ERNST, CAROL HAYLES, JOHN MACILWAINE, KARTHIK RAO, JANA SCHREUDER, CHRISTOPHER WALTERS AND MARY ZAPPONE, | ) ) ) ) ) ) ) ) |
| Defendants. | |

## COMPLAINT

Plaintiff Ancora Catalyst Institutional, L.P. ("Ancora" or "Plaintiff"), as and for its complaint against Blucora, Inc. ("Blucora" or the "Company") and, Georganne C. Proctor, Steven Aldrich, Mark Ernst, Carol Hayles, John Macilwaine, Karthik Rao, Jana Schreuder, Christopher Walters, and Mary Zappone (the "Director Defendants," and together with the Company, "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1. Ancora brings this action against Defendant seeking relief from Blucora's wrongful efforts to disqualify Ancora from running a competing slate of director nominees at Blucora's upcoming annual meeting of stockholders (the "Annual Meeting").

2. Ancora and the Company will soon be in the midst of a proxy contest leading up to the Annual Meeting. But Defendant has wrongfully sought to disqualify Ancora's nominees in reliance on coercive and unlawful bylaw provisions that impose improper conditions on Plaintiff's ability to present its nominees for election. These bylaw conditions not only

disenfranchise Plaintiff and favor the Company in any election, they impede stockholders who might wish to unseat one or more incumbent board members, and deprive stockholders of a fair and equitable assessment of the nominees based on their relative merits as potential directors. By imposing these conditions on Plaintiff, the Company violates established Delaware and federal law.

3. In July 2020, with its share price hovering near a four year low, and the possibility that incumbent directors could be challenged at the next Annual Meeting, the Company, through the Director Defendants, adopted certain amendments to its bylaws imposing more onerous requirements to nominate directors, including to require all director nominees to confirm in writing their explicit consent to appear *on the Company's proxy statement and proxy card* (the "Consent Requirement").

4. The Company has sought to disqualify Ancora's nomination of directors by refusing to waive or otherwise relax the Consent Requirement to permit stockholder nominees to appear on a separate proxy card in accordance with common practice, or on a "universal proxy card" that allows stockholders to select candidates from both the Company and the nominating stockholder's slates from comparable cards.

5. The Consent Requirement violates SEC Rule 17 C.F.R. § 240.14a-4(d)(4) (the "Bona Fide Nominee Rule") which requires that each nominee be "bona fide" and have provided consent willingly, not through coercion, to be named in any particular proxy statement and to serve as a director if elected.

6. The Consent Requirement also undercuts short slate rules adopted by the SEC to address stockholder concerns over the inability to split their vote between the company's and dissident's proxy cards.  A proviso to the Bona Fide Nominee Rule permits a dissident seeking to

elect a minority of the board to solicit authority to vote for some of the company's nominees on its proxy card by allowing such dissident to include on its proxy card the names of the company's nominees for whom it will oppose and not vote for. This allows stockholders to vote for the total number of director seats up for election without naming a nominee that does not wish to consent to be named on the proxy card.

7. Further, by insisting on compliance with the Consent Requirement, the incumbent Director Defendants have unlawfully, and in breach of their fiduciary obligations to the Company's stockholders, entrenched themselves and disenfranchised stockholders by retaining for themselves an unfair advantage in the election in at least two critical ways – each related to an inherent advantage in the Company's proxy card. *First*, the Consent Requirement allows the Company to "cherry pick" from Ancora's nominees and present them on the Company's proxy card as "incumbent friendly" or Company approved candidates, when in fact, they are not. *Second*, the Consent Requirement allows the Company to include *all* names from Ancora's card onto the Company Card, thereby allowing a stockholder to mix and match from both competing slates, while Ancora's card will remain populated with only its Nominees or, if the short slate rules are utilized, to identify only those Company nominees to which it plans to oppose at the Annual Meeting. The blatant asymmetry in the respective cards pushes voters to the Company card, where the Company can explicitly disclaim voting for Ancora's nominees and facilitate election of the incumbents. Because stockholders can only use a single card, the Consent Requirement decimates Ancora's overall slate, and impedes stockholders from challenging incumbents.

8. The Company has also sought to disqualify Plaintiff's nominees based on a pre-textual reading of its bylaws that would require Plaintiff to not only divulge its investment

strategy, but to also reveal confidential, proprietary and competitively sensitive information to the Company -- that has no relevance to the proxy contest -- as a condition to nominating directors and participating in the election (the "Trade Disclosure Requirement"). The Trade Disclosure Requirement serves no valid purpose and once again impermissibly tilts the playing field towards incumbents and chills future stockholder challenges. Challengers would face the Hobbesian choice of divulging information that will harm their business and/or election prospects or being disqualified from the election entirely. Like the Consent Requirement, the Trade Disclosure Requirement violates Delaware and federal law governing proxy contests.

9. The Company has further suggested that it may seek to disqualify one of Plaintiff's nominees, under the federal anti-trust laws, based on specious claims of the nominee's allegedly "interlocking" directorships related to Ancora's registered investment advisor business and the Company's tax-advantaged investment services business. The entities are not competitors, however, and the Company's claims are not supported by the Clayton Act.

10. Finally, the Company has also suggested it may attempt to allege group activity with other stockholders in violation of the Company's 4.9% ownership limitation under the bylaws and Schedule 13D when no such group activity exists, as another attempt to harass and threaten Ancora's ability to nominate and solicit a competing slate of directors at the Annual Meeting.

11. Ancora seeks injunctive and declaratory relief restraining Defendants from enforcing the Consent Requirement and the Trade Disclosure Requirement and otherwise improperly denying Plaintiff its ability to run its slate of nominees at the upcoming Annual Meeting.

## THE PARTIES

12. Plaintiff Ancora is a limited partnership based in Cleveland, Ohio. Ancora and its affiliates own approximately 3.2% of the outstanding shares of the Company's common stock.

13. Defendant Blucora is a Delaware corporation with its headquarters in Dallas, Texas. Blucora is a tax services company that offers customers a variety of tax preparation and filing services and also maintains a tax-advantaged wealth management business.

14. Defendant Proctor is the Chairman of the Company's Board. Upon information and belief, Proctor has served as a director of the Company since 2017.

15. Defendant Aldrich is a director of Company and has served on the Board since 2017.

16. Defendant Ernst is a director of the Company and has served on the Board since 2020.

17. Defendant Hayles is a director of the Company has served on the Board since 2018.

18. Defendant Macilwaine is a director of the Company and has served on the Board since 2018.

19. Defendant Rao is director of the Company and has served on the Board since 2020.

20. Defendant Schreuder is a director of the Company and has served on the Board since 2020.

21. Defendant Walters is the Company's President and Chief Executive Officer and a director of the Company, and has served on the Board since 2014.

22. Defendant Zappone is a director of the Company and has served on the Board since 2015.

**JURISDICTION AND VENUE**

23. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

24. This Court has personal jurisdiction over Blucora and the Director Defendants because Blucora is an entity organized under the laws of the State of Delaware.

**FACTUAL ALLEGATIONS**

**A.    THE COMPANY'S UNDERPERFORMANCE & COERCIVE BYLAWS**

25. In July 2020, the Company's share price hovered near a four year low. The Company was likely aware that incumbent directors could be challenged at the next Annual Meeting.

26. The Company, through the Director Defendants, adopted amendments to its bylaws explicitly imposing more onerous requirements to nominate directors, including to require all director nominees to confirm in writing their explicit consent to appear *on the Company's proxy statement and proxy card* (the "Consent Requirement").

27. This "Consent Requirement" is among the most egregiously pro-incumbent provisions in the Company's bylaws. It is an entrenchment device designed to stave off challenges to incumbent directors by ensuring that, in proxy contests, the Company's incumbent slate of directors maintain a competitive advantage over challengers.

28. The Consent Requirement provides, in relevant part that, "as to each person whom the stockholder proposes to nominate for election or reelection as a director (each, a '*Proposed Nominee*')," the stockholder nomination notice must "set forth . . . such Proposed Nominee's executed written consent to being named as a nominee *in the corporation's proxy statement and form of proxy*." Bylaws at § 2.5.1(c)(i)(D) (emphasis added).

29. The Consent Requirement clashes with the Bona Fide Nominee Rule, which, as stated above, requires that each nominee be "bona fide" and have provided consent willingly, not through coercion, to be named in a particular proxy statement and to serve as a director, if elected. 17 C.F.R. § 240.14a-4(d)(4).

30. The Bona Fide Nominee Rule serves important functions. Among other things, it (i) prevents the nomination of individuals who have not agreed to serve as directors, (ii) safeguards stockholders from wasting their votes on individuals who will not serve as directors, (iii) prevents a stockholder from nominating individuals who do not want to be associated with the nominating stockholder, and (iv) "assures voter that the nominee has consented in good faith to serve."

31. The Consent Requirement coerces stockholders' nominees to consent to appearing in the Company's proxy statement and on its proxy card. Simply put, they defeat the purpose of the Bona Fide Nominee Rule.

32. As stated above, the Consent Requirement also provides the Company an unfair advantage in any proxy contest. It enables the Company to include any or all stockholder nominees on its proxy card—while the Bona Fide Nominee Rule prevents any stockholder from adding the Company's nominees to its proxy card.

33. This is an important advantage, especially in close proxy contests. All else equal, stockholders are more likely to vote using a proxy card that contains a greater number of nominees.

34. The Company can further exploit this advantage by cherry-picking one or more of the stockholder nominees for inclusion on its proxy card. Cherry picking can entice stockholders to vote using the Company's proxy card instead of Ancora's proxy card.

35. Because the Consent Requirement coerces the consent of stockholder nominees, they also facilitate Company disclosures that include those nominees and give the false impression that they endorse or support the Company's existing leadership.

36. In sum, the Consent Requirement is invalid and inequitable because it is designed to (a) coerce the consent of director nominees who would otherwise decline to be named in the Company's proxy statement, (b) undermine the effectiveness of the Bona Fide Nominee Rule, and (c) give the Company an unfair advantage in electoral contests.

34. The bylaws also contain a "Trade Disclosure Condition," which provides, in relevant part, "as to the stockholder giving notice, any Proposed Nominee and any Stockholder Associated Person" that, "such stockholder's notice shall set forth . . . the investment strategy or objective, if any, of such stockholder and each such Stockholder Associated Person who is not an individual and a copy of the prospectus, offering memorandum or similar document, if any, provided to investors or potential investors in such stockholder and each such Stockholder Associated Person." § 2.5.1(c)(iii)(D).

35. As stated above, the Trade Disclosure Requirement, like the Consent Requirement, is an improper and invalid entrenchment device, particularly as, according to Defendant's interpretation, it forces nominating stockholders to divulge irrelevant, yet proprietary and competitively sensitive financial information or risk disqualification.

**B.     ANCORA'S OUTREACH TO THE COMPANY AND NOMINATIONS**

36. Driven by sluggish earnings and poor management, by the fall of 2020, the Company's share price was down nearly 67% from its December 27, 2019 closing price of 26.29 per share.

37. As a concerned investor, on December 10, 2020, Ancora reached out to the Company's investor relations department via email and requested a telephone call with management to address the Company's poor performance and strategies for improvement.

38. Over the next few months, Ancora and the Company discussed the Company's performance and strategic direction, including with regard to the Company's tax preparation business, TaxAct, its wealth management/registered investment advisory (RIA) business, Avantax, as well as certain competitive advantages and growth opportunities for Avantax.

39. The Company was dismissive of Ancora's opinions and Ancora was highly concerned with the strategic direction of the Company under existing leadership and resolved to nominate directors better positioned to unlock stockholder value.

40. On January 17, 2021, Ancora's outside counsel sent a letter to the Company requesting that it waive the Consent Requirement.  The letter noted that because Ancora would be filing its own proxy statement and proxy card to solicit votes in favor of its nominees, the Consent Requirement was unnecessary and appeared coercive to individuals that did not wish to be named as nominees in the Company's proxy statement and proxy card.

41. On January 22, 2021, the Company responded through counsel that it would not waive the Consent Requirement.

42. Ancora's counsel sent a follow-up letter to the Company's outside counsel one week later, on January 25, 2021, reiterating Ancora's views that the Consent Requirement was coercive and driven by the Company's unlawful goal of obtaining an unfair advantage in a proxy contest.  Ancora suggested in the letter that if the Company would not agree to waive the Consent Requirement, the parties should agree at the outset of the nomination process to use a

universal proxy card and for the Company to provide to Ancora written consents of the Company's director nominees to be named in the universal proxy card.

43. On January 28, 2021, Ancora's counsel sent a letter to the Company, noting that the Trade Disclosure Requirements require the disclosure of certain confidential, proprietary and sensitive information that is irrelevant in the context of evaluating director nominees, including prospectuses and offering memorandums. Nevertheless, Ancora offered to disclose such information, but only if the Company agreed to keep such information confidential by entering into a non-disclosure agreement (the "NDA"), a draft of which was attached to the letter. Ancora asked for a response by February 1, 2021.

44. The Company responded by letter on January 29, 2021 that it was premature to agree to the use of a universal proxy card and that the Company would not waive the Consent Requirement.

45. On February 1, 2021, the Company responded to Ancora's January 28, 2021 letter, rejecting the request for a response on the NDA by February 1, 2021. The Company said it would consider the NDA and provide comments "shortly".

46. On February 10, 2021, Ancora delivered a notice to the Company, pursuant to the requirements in the Company's bylaws, nominating the following individuals for election to the Board at the 2021 Annual Meeting: (i) Ancora's Chairman and CEO, Mr. Frederick DiSanto; (ii) Ms. Cindy Schulze Flynn, Chief Marketing and Communications Officer of Union Home Mortgage; (iii) Robert MacKinlay, Executive Vice President and Chief Financial Officer of Gardiner, a leading HVAC & building services company, and (iv) Kimberly Smith Spacek, a Partner and the Director of Marketing and Investor Relations at Owl Creek Asset Management, L.P, a global investment advisory (collectively, the "Nominees").

47. The notice did not include the Consent Requirement but did include the consent of each Nominee to be named in Ancora's proxy materials and to serve as a director, if elected. The notice reiterated Ancora's offer to provide consents in compliance with the Consent Requirement if the Company agreed to deliver consents from the Company's nominees and agree to the use of a universal proxy card. The notice also offered to provide Ancora's prospectuses and offering memorandums to satisfy the Trade Disclosure Requirement if the Company executed the NDA previously sent to the Company to keep the information confidential.

48. On February 16, 2021, Blucora, through counsel, notified Ancora that it found the notice incomplete, deficient and defective for a number of reasons, including that the notice did not comply with the Consent Requirement or the Trade Disclosure Requirement. The February 16 letter requested consents from the Nominees to be named in the Company's proxy statement and proxy card without agreement to provide consents to Ancora from the Company's nominees or to use a universal proxy card. The February 16 letter also requested delivery of Ancora's prospectuses and offering memorandums and agreed to keep them confidential under their own draft non-disclosure agreement rather than the NDA prepared by Ancora in order to satisfy the Trade Disclosure Requirement.

49. On February 18, 2021, Ancora, through counsel, served a letter on the Company supplementing its notice by including consents from the Nominees to be named in the Company's proxy card, but subject to a condition that the Company agree to the use of a universal proxy card and including copies of Ancora's prospectus, offering memorandum and related documents (collectively, the "PPMs") in satisfaction of the Trade Disclosure Requirement. The PPMs included information on Ancora's investment strategy. Ancora

redacted certain limited and irrelevant, but highly confidential, and proprietary information in the PPMs.

50. On February 20, 2021, the Company responded by letter, through counsel, once again insisting that that the Consent Requirement was not satisfied due to the condition that the Company to agree to the use of a universal proxy card, which the Company refused to accept. The Company also claimed that certain cautionary language accompanying the delivery of the PPMs and the noted redactions meant the Trade Disclosure Requirement had not been satisfied. The Company maintained that, if these purported deficiencies were not cured, the nomination by Ancora of the Nominees would be invalid and disqualified.

51. The Company has also wrongly suggested that Mr. DiSanto may be disqualified based on an alleged "interlocking" directorship under federal anti-trust laws (15 U.S.C. § 19) because Ancora's registered investment advisors Ancora Advisor Services LLC and Ancora Family Wealth Advisors LLC allegedly compete with Blucora's registered investment advisor, Avantax Advisory Services Inc. Under established law, the companies are not competitors and Ancora's claim is meritless.

52. Faced with no other alternative to acquiescing to the Company's demands, Ancora brings this action for relief.

**COUNT I:  VIOLATION OF *BONA FIDE NOMINEE RULE***

**(17 C.F.R. § 240.14a-4(d)(4))**

53. Plaintiff repeats and realleges the preceding paragraphs as if set forth fully herein.

54. Defendant's insistence on compliance with the Consent Requirement violates the Bona Fide Nominee Rule, which requires that each nominee be "bona fide" and have provided

consent willingly, not through coercion, to be named in a particular proxy card and agree to serve as a director, if elected, and provides, in relevant part, that "(d) No proxy shall confer authority:

(1) To vote for the election of any person to any office for which a bona fide nominee is not named in the proxy statement" and

"(4) …. A person shall not be deemed to be a bona fide nominee and he shall not be named as such unless he has consented to being named in the proxy statement and to serve if elected."  17 C.F.R. § 240.14a-4(d)(4).

55. The Consent Requirement violates the Bona Fide Nominee Rule by coercing Ancora's Nominees into being named on the Company's card without their actual consent, and falsely portrays them to stockholders as having consented to being on the Company's card when such 'consent' was not freely given.

## COUNT II:  DECLARATION UNDER THE CLAYTON ACT

## (15 U.S.C. § 19)

56. Plaintiff repeats and realleges the preceding paragraphs as if set forth fully herein.

57. Ancora Holdings, Inc., Ancora Advisors, LLC, Ancora Alternatives, LLC, Ancora Family Wealth Advisors, LLC and Ancora Retirement Plan Advisors, Inc. are not "competitors" of Blucora's tax-advantaged wealth management practice as that term is used under the Sherman Act.

58. An actual controversy exists between Ancora and Defendant regarding Mr. DiSanto's eligibility under the Clayton Act to serve as a Blucora director.

59. Plaintiff seeks a judicial declaration pursuant to 28 U.S.C. § 2201 that Mr. DiSanto should not be disqualified as a nominee under the Clayton Act.

60. Plaintiff has no adequate remedy at law.

## COUNT III: BREACH OF FIDUCIARY DUTY

61. Plaintiff repeats and realleges the preceding paragraphs as if set forth fully herein.

62. The Director Defendants owe the Company and its stockholders fiduciary duties of care, loyalty, and candor.

63. The Director Defendants hope to entrench themselves by disenfranchising stockholders. The primary purpose of the Consent Requirement and the Trade Disclosure Requirement is to disenfranchise certain stockholders and maximize the Director Defendants' likelihood of success at the Annual Meeting.

64. The Director Defendants, acting through the Company, breached their fiduciary duties by unfairly and inequitably manipulating the stockholder nomination process.

65. Plaintiff will suffer imminent, irreparable harm if the Company is permitted to enforce the Consent Requirement and the Trade Disclosure Requirement to disqualify Plaintiff's nominees.

## COUNT IV: DECLARATION THAT THE CONSENT REQUIREMENT AND TRADE DISCLOSURE REQUIREMENT ARE INVALID

66. Plaintiff repeats and realleges the preceding paragraphs as if set forth fully herein.

67. There is a justiciable controversy between the parties concerning the validity of the Consent Requirement and Trade Disclosure Requirement.

68. Section 2.5.1(c)(D), the Consent Requirement, of Blucora's bylaws requires that all director nominees "execute[] written consent to being named as a nominee in the corporation's proxy statement and form of proxy[.]"

69. Section § 2.5.1(c)(iii)(D), the Trade Disclosure Requirement, of the bylaws provides, in relevant part, "as to the stockholder giving notice, any Proposed Nominee and any Stockholder Associated Person" that, "such stockholder's notice shall set forth . . . the

investment strategy or objective, if any, of such stockholder and each such Stockholder Associated Person who is not an individual and a copy of the prospectus, offering memorandum or similar document, if any, provided to investors or potential investors in such stockholder and each such Stockholder Associated Person."

70. Defendants have refused to waive the Consent Requirement and Trade Disclosure Requirement upon Ancora's request.

71. The adoption of the Consent Requirement and the Trade Disclosure Requirement was an inequitable, invalid and draconian exercise of the Director Defendants' powers and was meant to disenfranchise stockholders and entrench the Director Defendants.

72. The Consent Requirement and the Trade Disclosure Requirement are invalid under Delaware and federal law.

73. Plaintiff will suffer irreparable harm in the absence of an injunction enjoining Defendant from enforcing the Consent Requirement and Trade Disclosure Requirement, as it has no adequate remedy at law.

**COUNT V: DECLARATION THAT PLAINTIFF'S NOMINATION NOTICE IS VALID**

74. Plaintiff repeats and realleges the preceding paragraphs as if set forth fully herein.

75. There is a justiciable controversy between the parties concerning the validity of Plaintiff's nomination notice.

76. Plaintiff's nomination notice is proper and compliant in all respects and should be declared as valid.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ancora requests that the Court enter an order or judgment in its favor and against Defendant as follows**:**

    a.    Enjoining Defendant from enforcing the Consent Requirement and the Trade Disclosure Requirement;

    b.    Enjoining the Company from including Ancora's nominees on the Company's proxy card;

    c.    Declaring that (i) the Director Defendants have breached their fiduciary duties by adopting and/or enforcing the Consent Requirement and the Trade Disclosure Requirement; (ii) that such Requirements violate 17 C.F.R. § 240.14a-4(d)(4); (iii) that Mr. DiSanto is not prohibited from serving as a director of the Company pursuant to Section 8 of the Clayton Act; (iv) that Plaintiff's nomination notice is valid; and

    d.    Awarding Ancora's costs of the proceedings herein, including reasonable attorneys' and experts' fees and expenses; and

    e.    Granting any and all other and further relief that the Court may deem just and proper.

| OF COUNSEL: | */s/ A. Thompson Bayliss* |
| --- | --- |
| | A. Thompson Bayliss (#4379) |
| Thomas J. Fleming | Adam K. Schulman (#5700) |
| Lori Marks-Esterman | April M. Kirby (#6152) |
| OLSHAN FROME WOLOSKY LLP | ABRAMS & BAYLISS LLP |
| 1325 Avenue of the Americas | 20 Montchanin Road, Suite 200 |
| New York, NY 10019 | Wilmington, Delaware 19807 |
| Tel: (212) 451-2300 | Tel: (302) 778-1000 |
| Fax: (212)451-2222 | Fax: (302) 778-1001 |
| TFleming@olshanlaw.com | bayliss@abramsbayliss.com |
| lmarksesterman@olshanlaw.com | schulman@abramsbayliss.com |
| | akirby@abramsbayliss.com |

*Attorneys for Ancora Catalyst Institutional, LP*

Dated: February 24, 2021